IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN DIVISION

INTERNATIONAL UNION, UNITED
AUTOMOBILE, AEROSPACE &
AGRICULTURAL IMPLEMENT
WORKERS OF AMERICA and
UNITED AUTO WORKERS
LOCAL 13,

      Plaintiffs,

vs.

ROUSSELOT, INC.,

      Defendant.

No. C07-1001

RULING ON MOTIONS FOR
SUMMARY JUDGMENT

## TABLE OF CONTENTS

I.    INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II.   PROCEDURAL HISTORY. . . . . . . . . . . . . . . . . . . . . . . . . . . 2

III.  ISSUE PRESENTED. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

IV.  RELEVANT FACTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

V.   LEGAL STANDARD FOR SUMMARY JUDGMENT. . . . . . . . . . . . . . . 5

VI.  DISCUSSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
     A.    The Parties' Claims. . . . . . . . . . . . . . . . . . . . . . . . . . . 7
          1.    The Union's Argument. . . . . . . . . . . . . . . . . . . . . 7
          2.    The Company's Argument. . . . . . . . . . . . . . . . . . . 9
     B.    Analysis. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

VII.  ATTORNEY FEES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

VIII. CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

IX.   ORDER. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

## I. INTRODUCTION

On the 28th day of December, 2007, this matter came on for telephonic hearing on the Motion for Summary Judgment (docket number 12) filed by Plaintiffs International Union, United Automobile, Aerospace and Agricultural Implement Workers of America and United Auto Workers Local 13 (collectively "the Union") on November 13, 2007, and the Motion for Summary Judgment (docket number 13) filed by Defendant Rousselot, Inc. ("the Company") on November 15, 2007. Plaintiffs were represented by their attorney, William N. Toomey. Defendant was represented by its attorney, Kelly R. Baier.

## II. PROCEDURAL HISTORY

On January 31, 2007, the Union filed a Complaint (docket number 2) seeking an order compelling arbitration and reasonable attorney fees. On February 19, 2007, the Company filed an Answer (docket number 6) requesting that the Complaint be dismissed with prejudice and asking for reasonable attorney fees. On June 20, 2007, both parties consented to proceed before the undersigned in this matter pursuant to the provisions set forth in 28 U.S.C. § 636(c).

The Union filed its instant summary judgment motion on November 13, 2007. On December 7, 2007, the Company filed a Resistance (docket number 14). The Union filed a Reply (docket number 17) to the Company's Resistance on December 14, 2007.

The Company filed its instant motion for summary judgment on November 15, 2007. On December 10, 2007, the Union filed a Resistance (docket number 15). The Company filed a Reply (docket number 18) to Plaintiffs' Resistance on December 17, 2007.

## III. ISSUE PRESENTED

The principal issue before the Court is whether the Company should be ordered to participate in arbitration to resolve a dispute regarding the establishment of a new job classification. The parties agree that whether a collective bargaining agreement requires the parties to arbitrate a particular grievance is "undeniably an issue for judicial determination." *AT&T Technologies v. Communication Workers of America*, 475 U.S.

2

643, 649 (1986); *International Brotherhood of Elec. Workers, AFL-CIO, Local 1 v. GKN Aerospace North America, Inc.*, 431 F.3d 624, 627 (8th Cir. 2005) (same). Furthermore, both parties agree that the material facts are undisputed and this issue may be resolved by summary judgment.

## IV. RELEVANT FACTS

Rousselot, Inc. has a plant in Dubuque, Iowa, which manufactures gelatin from pork skins. The Plaintiffs, which are three labor organizations, represent member employees at the Dubuque plant. In January 2005, collective bargaining negotiations began between the Union and the Company for a new collective bargaining agreement. The parties entered into a written agreement, effective from March 1, 2005 through March 1, 2009.[1] The agreement made the Union the "exclusive bargaining representative" for all production and maintenance employees and laboratory technicians at the Company's Dubuque plant.

In June 2006, the Company had discussions with the Union regarding a reorganization plan for the Dubuque plant which would change some job responsibilities for Grind and Blend Operators in order to minimize cross-contamination.[2] Discussions between the parties regarding the reorganization plan also occurred in July 2006, and August 2006. On August 14, 2006, the Company notified the Union that it proposed to: (1) establish a new Production Operator classification with the title "Grease/Grinding"; (2) bid eight positions in the new "Grease/Grinding" classification; (3) eliminate the four existing Grinding and Blending Operator positions; (4) make a shift change for the remaining nine Grinding and Blending Operator positions; and (5) eliminate the four

---

[1] *See* Agreement Between Rousselot, Inc. and Local 13 Unit of U.A.W. (Plaintiffs' Appendix at 3-73).

[2] The parties agree that the Company informed the Union, during the January 2005 collective bargaining negotiations, that it needed to make organizational changes to minimize cross-contamination between the finished product and the raw material.

existing Grease Plant Operator positions.[3] The Company's reorganization plan went into effect on August 30, 2006.

On September 1, 2006, Roger Kremer ("Kremer"), a union member, filed a "Step Two" grievance with the Company, arguing that the elimination of the four Grease Plant Operator and four Grinding and Blending Operator positions, and the creation of the new "Grease/Grinding" Operator position, was a violation of the collective bargaining agreement under Article XII, Section 1(C) (Job Classifications).[4] On September 12, 2006, the Company denied the grievance, claiming that it had not eliminated the Grease Plant classification or the Grinding & Blending classification. (Although in its memorandum of reorganization, the Company indicated that four "jobs" in each of those areas were being "eliminated."[5]) Rather, the Company claimed that it had simply added a new classification.[6] In addition, the Company noted that there is nothing in the collective bargaining agreement which requires the Company to maintain employees in any specific job classification.

On September 26, 2006, Kremer filed a "Step 3 Grievance" with the Company. The grievance claims that combining existing job classifications in order to create a new job classification "was not the intent of the language that was negotiated in the existing Agreement."[7] In a letter dated October 27, 2006, the Company denied the grievance stating that it had the right pursuant to Article XIII, Section 8, of the collective bargaining

---

[3] *See* Rousselot Plant Reorganization memorandum, dated August 14, 2006 (Plaintiffs' Appendix at 74).

[4] *See* Collective Bargaining Agreement (Plaintiffs' Appendix at 36). *See also* Article VIII of the Collective Bargaining Agreement (Plaintiffs' Appendix at 19-23) for an explanation of the four-step grievance procedure.

[5] *See* Rousselot Plant Reorganization memorandum, dated August 14, 2006 (Plaintiffs' Appendix at 74).

[6] *See* Response to Step 2 Grievance (Plaintiffs' Appendix at 75).

[7] *See* Step Three Grievance (Plaintiffs' Appendix at 76).

agreement to create the new job classification being grieved.[8] Specifically, the Company stated "[t]he 'new' classification was created because of concerns with contamination of our products, the need to run a[n] effective and efficient organization, and the inadequate productivity level of the Grease Plant Operators. . . . Simply put, the reorganization is a right afforded management under Article XIII, Wages and Benefits, Section 8 - New Job Classifications and there is no legitimate grievance regarding this matter."[9]

On November 1, 2006, the Union provided the Company with notice that it intended to arbitrate Kremer's new job classification grievance.[10] On December 15, 2006, the Union informed the Company that it had requested a panel of five arbitrators from the Federal Mediation and Conciliation Service for Kremer's grievance.[11] On January 11, 2007, the Company responded that it would not arbitrate Kremer's grievance because it "met its obligations" outlined in Article XIII, Wages and Benefits, Section 8, of the collective bargaining agreement.[12] The Company further claimed that Article XIII, Section 8, does not allow for arbitration of anything other than wage issues. The Company concluded it "is willing to arbitrate the wage matter, but will refuse to arbitrate the reorganization issue." On January 31, 2007, the Union filed its Complaint in the instant action, seeking an order compelling arbitration and reasonable attorney fees.

## V. LEGAL STANDARD FOR SUMMARY JUDGMENT

Both parties have filed for summary judgment. Summary judgment is appropriate if the record shows that "there is no genuine issue as to any material fact and that the

---

[8] *See* Defendant's Letter, dated October 27, 2006 (Plaintiffs' Appendix at 77-79).

[9] *Id.* at 79.

[10] The Union's arbitration notice initiated "Step Four" of the grievance procedure set forth in the collective bargaining agreement. *See* Article VIII of the Collective Bargaining Agreement (Plaintiffs' Appendix at 21-23).

[11] *See* Plaintiffs' Letter, dated December 15, 2006 (Plaintiffs' Appendix at 83).

[12] *See* Defendant's Letter, dated January 11, 2007 (Plaintiffs' Appendix at 84-85).

5

moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). "An issue of fact is genuine when a 'reasonable jury could return a verdict for the nonmoving party.'" *Friends of Boundary Waters Wilderness v. Bosworth*, 437 F.3d 815, 821 (8th Cir. 2006) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A fact is a "material fact" when it "might affect the outcome of the suit under the governing law. . . ." *Anderson*, 477 U.S. at 248. The court must view the record in the light most favorable to the nonmoving party and afford it all reasonable inferences. *Baer Gallery, Inc. v. Citizen's Scholarship Foundation of America, Inc.*, 450 F.3d 816, 820 (8th Cir. 2006) (citing *Drake ex rel. Cotton v. Koss*, 445 F.3d 1038, 1042 (8th Cir. 2006)).

Procedurally, the moving party bears the initial responsibility of informing the court of the basis for its motion, and must identify those portions of the record which it contends show a lack of a genuine issue of material fact. *Heisler v. Metropolitan Council*, 339 F.3d 622, 631 (8th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)); *see also Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir. 1992) (same). Once the moving party has successfully carried its burden under Rule 56(c), the nonmoving party has an affirmative burden to go beyond the pleadings and by depositions, affidavits, or otherwise, designate "specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e); *see, e.g., Baum v. Helget Gas Products, Inc.*, 440 F.3d 1019, 1022 (8th Cir. 2006) ("Summary judgment is not appropriate if the non-moving party can set forth specific facts, by affidavit, deposition, or other evidence, showing a genuine issue for trial."). The nonmoving party must offer proof "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. "'Evidence, not contentions, avoids summary judgment.'" *Reasonover v. St. Louis County, Mo.*, 447 F.3d 569, 578 (8th Cir. 2006) (quoting *Mayer v. Nextel West Corp.*, 318 F.3d 803, 809 (8th Cir. 2003)).

## VI. DISCUSSION

### A. The Parties' Claims

#### 1. The Union's Argument

The Union argues that it is entitled to summary judgment because the Company incorrectly determined that arbitration was not applicable to the Union's objection to the proposed new job classification. The Union contends that it properly followed each step of the grievance procedure, including arbitration at "Step Four." The Union maintains that the Company's failure to arbitrate the new job classification grievance is the result of the Company's misinterpretation of Article XIII, Section 8, of the collective bargaining agreement.

Article XIII, Section 8, provides in pertinent part:

> When the Company proposes to establish a new job classification, it shall discuss with the Union the proposed duties and wage rates. If the matter is not settled by mutual agreement within fourteen (14) calendar days after such discussions have been initiated, the matter may be taken up through the grievance procedure.
>
> In the event any such dispute proceeds to arbitration, the issue presented to the arbitrator shall be whether the rate proposed by the Company bears a proper relation to other rates in effect in job classification[s] covered by this Agreement. . . .

(Plaintiff's Appendix at 44) The Company interprets Article XIII, Section 8, to limit arbitration involving a new job classification grievance to only disputes regarding wage rates; specifically, the relationship between a proposed wage rate for a new job classification and existing wage rates for other job classifications already covered by the collective bargaining agreement.[13] The Union asserts that Article XIII, Section 8, should

---

[13] *See* Defendant's Letter, dated January 11, 2007 (Plaintiffs' Appendix at 85) ("The company has met its obligations outlined in Article XIII, Wages and Benefits, Section 8. However, the obligations under this section does not include arbitrating anything but the wage issue. The issue presented to the arbitrator must be that of wages
(continued...)

be interpreted in the following manner: (1) If a dispute over a proposed new job classification is not settled by mutual agreement, then the grievance procedure outlined in the collective bargaining agreement may be applied; and (2) if the dispute involves a question regarding the appropriate wage rate for the new classification, and the dispute goes to arbitration, then the arbitrator is required to resolve the wage rate dispute by considering "whether the rate proposed by the Company bears a proper relation to other rates in effect in job classification[s] covered by [the] Agreement."[14]

The Union argues that the Company's interpretation of Article XIII, Section 8, conflicts with Article VIII, Step Four, of the collective bargaining agreement. Article VIII, Step Four, provides in pertinent part:

> Any grievances which have been properly and timely raised and processed through each step of the grievance procedure and have not been adjusted, settled, waived or disposed of may be submitted to arbitration within ten (10) working days of the Step Three reply by written notice. . . .
>
> . . .
>
> i) It is agreed that the arbitration procedure provided for in this Grievance Article shall be the sole and exclusive means for the determination of all grievances arising under this Agreement, and that such arbitration procedure shall be in lieu of any other remedies and forums at law, in equity or otherwise, which will or may be available to either of the parties respecting a grievance arising under this Agreement. . . .

(Plaintiff's Appendix at 21-22) Specifically, the Union argues that under the Company's interpretation, "the Union would have no recourse for the Company's denial of any Step Three grievance concerning a job classification where the issue was not the wage rate, thereby making any grievance of any such issue unilaterally determinable by the Company

---

[13] (...continued)
alone as clearly addressed in the language.").

[14] See Article XIII, Section 8, of the Collective Bargaining Agreement (Plaintiff's Appendix at 44).

8

and therefore an exercise in futility. The language in the second paragraph of Section 8 is not so clear as to permit such a result."[15]

### 2. *The Company's Argument*

The Company contends that its interpretation of Article XIII, Section 8, is correct. According to the Company, a dispute regarding the establishment of a new job classification may be grieved, but the only issue available for arbitration is whether the proposed wage rate for the new job classification is appropriate. The Company argues that

> the parties mutually agreed in Article XIII, Section 8, to truncate the general grievance arbitration procedure set forth in Article VIII of the collective bargaining agreement and specifically removed arbitration from the dispute resolution process when a dispute arises regarding the actual establishment of a new job classification. Only the issue of whether the Company has proposed an appropriate wage rate can be presented to the arbitrator.[16]

The Company further argues that it is entitled to summary judgment because a plain reading of Article XIII, Section 8, demonstrates that it did not agree to arbitrate the issue of whether it could create a new job classification. According to the Company, if it is compelled to arbitrate the establishment of the new job classification, it would render meaningless the language in Article XIII, Section 8, identifying "the issue" to be presented in arbitration as one of wage rates.

The Company further argues that the more specific language in Article XIII, Section 8, restricts the scope of the general grievance provisions set forth in Article VIII. Specifically, the Company states that "[i]n Article XIII, Section 8, the parties carved out a very narrow and limited exception to the general grievance procedures. The Court

---

[15] *See* Plaintiffs' Brief in support of Plaintiffs' Motion for Summary Judgment (docket number 12-2) at 11.

[16] *See* Defendant's Brief in Resistance to Plaintiffs' Motion for Summary Judgment (docket number 14) at 2.

9

should accept the parties' intent to limit the issue to be presented to an arbitrator to whether an appropriate wage rate is established for a new job classification."[17]

## B. Analysis

"Arbitration is a matter of contract, and 'a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.'" *Crown Cork & Seal Co., Inc. v. International Ass'n of Machinists and Aerospace Workers*, 501 F.3d 912, 916 (8th Cir. 2007) (quoting *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960)); *International Brotherhood of Elec. Workers, AFL-CIO, Local 1 v. GKN Aerospace North America, Inc.*, 431 F.3d 624, 627 (8th Cir. 2005) (same); *see also AT&T Technologies, Inc. v. Communications Workers of America*, 475 U.S. 643, 648-49 (1986) (citation omitted) (stating "arbitrators derive their authority to resolve disputes only because the parties have agreed in advance to submit such grievances to arbitration."). When a contract contains an arbitration clause, there is a presumption of arbitrability. *AT&T Technologies, Inc.*, 475 U.S. at 650. Thus, "[a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." *United Steelworkers of America*, 363 U.S. at 582-83. Furthermore, where a collective bargaining agreement contains a broad arbitration clause and there is not an express provision excluding a particular grievance from arbitration, "only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail." *AT&T Technologies, Inc.*, 475 U.S. at 650; *see also Teamsters Local Union No. 688 v. Industrial Wire Products, Inc.*, 186 F.3d 878, 881 (8th Cir. 1999) ("When there exists an express agreement to arbitrate, there arises a presumption that the parties agreed to submit the dispute to arbitration unless there is clear intent 'that the parties did not want to arbitrate a related matter.' *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 945 (1995)."). Because arbitration is a matter of consent, the

---

[17] *Id.* at 12-13.

presumption in favor of arbitrability must take into account the intent of the contracting parties. *Teamsters Local Union No. 688*, 186 F.3d at 881.

Article VIII of the collective bargaining agreement provides a four-step grievance procedure for resolving "a dispute as to the meaning or application of a provision" in the collective bargaining agreement.[18] At Step Four, "[a]ny grievances which have been properly and timely raised and processed through each step of the grievance procedure and have not been adjusted, settled, waived or disposed of may be submitted to arbitration within ten (10) working days of the Step Three reply by written notice."[19] Article VIII further states that "[i]t is agreed that the arbitration procedure provided for in this Grievance Article shall be the sole and exclusive means for the determination of all grievances arising under this Agreement."[20] Because the collective bargaining agreement contains a broad arbitration clause, there is a presumption that the parties agreed to submit disputes regarding the meaning or application of provisions in the agreement to arbitration. *See AT&T Technologies, Inc.*, 475 U.S. at 650; *Teamsters Local Union No. 688*, 186 F.3d at 881.

Article XIII, Section 8, of the collective bargaining agreement provides that when the Company proposes the creation of a new job classification, "it shall discuss with the Union the proposed duties and wage rates."[21] "If the matter is not settled by mutual agreement" within fourteen days of the discussions being initiated, then "the matter may be taken up through the grievance procedure." Article XIII, Section 8, further states, however, that "[i]n the event any such dispute proceeds to arbitration, the issue presented

---

[18] *See* Article VIII, Grievance Procedure, of the Collective Bargaining Agreement (Plaintiffs' Appendix at 19).

[19] *See* Article VIII, Step Four, of the Collective Bargaining Agreement (Plaintiffs' Appendix at 21).

[20] *Id.* (Plaintiffs' Appendix at 22).

[21] *See* Article XIII, Section 8, of the Collective Bargaining Agreement (Plaintiffs' Appendix at 44).

to the arbitrator shall be whether the rate proposed by the Company bears a proper relation to other rates in effect in job classification[s] covered by this Agreement."[22] Article XIII, Section 8, is silent as to whether a non-wage rate issue pertaining to a new job classification can be arbitrated. That is, the Agreement does not specifically state that other issues--such as proposed duties or the establishment of the new job classification itself--are *not* subject to arbitration.

Article VIII of the Collective Bargaining Agreement sets forth a broad four-step process for resolving disputes "as to the meaning or application of a provision of this Agreement." Article XIII, Section 8--relating to new job classifications--requires the Company when it "proposes to establish a new job classification" to discuss with the Union "the proposed duties and wage rates." Section 8 further provides that "[i]f the matter is not settled by mutual agreement," then "the matter may be taken up through the grievance procedure."

Notably, Section 8 does not require the Company to discuss with the Union the actual establishment of a new job classification. Rather, it is only required to discuss "the proposed duties and wage rates." Therefore, the Court believes that the only issues which are properly addressed through the grievance procedure are the proposed duties and wage rates, rather than the establishment of the new job classification itself.

More importantly to the issue at hand, however, is the additional limitation found in the second paragraph of Section 8. The general provision for arbitration in Step Four is addressed specifically in the area of new job classifications. The parties specifically agreed that in the event the matter proceeded to arbitration, "the issue" would be whether the rate proposed by the Company "bears a proper relation to other rates" for other job classifications. By the use of the singular term "issue," the parties agreed that only the issue of wages was subject to arbitration. *Crown Cork*, 501 F.3d at 916 ("a party cannot be required to submit to arbitration any dispute which he has not agreed to submit.")

---

[22] *Id.*

12

While the Court recognizes the presumption in favor of arbitration, the Court concludes that the second paragraph of Section 8 unambiguously limits arbitration on issues relating to establishment of a new job classification, to the single question of whether the proposed wage rate "bears a proper relation" to other existing job classifications.[23]

## VII. ATTORNEY FEES

The Union argues that it is entitled to attorney fees because:

> The only reasonable reading of the Agreement compels the conclusion that the grievance at issue is subject to arbitration, and there was and is not reasonable justification for the Company's refusal to arbitrate the grievance. The Company has nonetheless knowingly propounded an untenable position and has willfully burdened the Union with the expense of litigation. The Company's actions constitute bad faith practices as to the Agreement, the grievance, and the present litigation, and necessitate an award of attorneys' fees in compensation for the Union's defense of its rights under the Agreement.

Plaintiffs' Brief in support of Plaintiffs' Motion for Summary Judgment (docket number 12-2) at 12.

A prevailing party may recover attorney fees, if the losing party acted "in bad faith, vexatiously, wantonly, or for oppressive reasons." *American Federation of Musicians, Local 2-197, AFL-CIO v. St. Louis Symphony Society*, 203 F.3d 1079, 1081 (8th Cir. 2000) (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45-46 (1991) and *United Paperworkers Int'l Union v. Champion Int'l Corp.*, 81 F.3d 798, 801-02 (8th Cir. 1996)).

In this case, the parties acted in accordance with the collective bargaining agreement and followed the grievance procedures for disputes involving a new job classification until the grievance reached the point of arbitration. At Step Four of the grievance procedure, the parties disagreed on the applicability of arbitration based on the interpretation of

---

[23] The Union complains that if arbitration is limited to wage rate only, then the preceding grievance steps would be "an exercise in futility." *But see Local 791 v. Shaw's Supermarkets, Inc.*, 507 F.3d 43 (1st Cir. 2007).

13

conflicting provisions of the collective bargaining agreement. Although the Court has adopted the Company's position on this issue, the Union's interpretation was not completely implausible or unreasonable. Accordingly, the Court finds that neither party acted "in bad faith, vexatiously, wantonly, or for oppressive reasons." *American Federation of Musicians, Local 2-197, AFL-CIO*, 203 F.3d at 1081. Therefore, the Court finds that neither party is entitled to attorney fees.

## VIII. CONCLUSION

The Court concludes that the issue of whether the Company is entitled to establish a new job classification is not subject to arbitration pursuant to the terms of the parties' collective bargaining agreement. Accordingly, the Company is entitled to summary judgment. The Union's Motion for Summary Judgment will be denied and the Complaint will be dismissed.

## IX. ORDER

**IT IS THEREFORE ORDERED AS FOLLOWS:**

1. The Motion for Summary Judgment (docket number 12) filed by Plaintiffs is **DENIED**.

2. The Motion for Summary Judgment (docket number 13) filed by Defendant is **GRANTED**.

3. The Complaint (docket number 2) filed by Plaintiffs on January 31, 2007, is hereby **DISMISSED**.

DATED this 29th day of February, 2008.

JON STUART SCOLES
United States Magistrate Judge
NORTHERN DISTRICT OF IOWA